Michael ARMSTRONG

v.

UNITED STATES

No. Civ.A. 04–4077.
No. 99–CR–603–1.

United States District Court,
E.D. Pennsylvania.

March 28, 2005.

Michael Armstrong, Pro Se, Fort Dix, NJ.

### MEMORANDUM AND ORDER

SANCHEZ, District Judge.

Michael Armstrong asks this Court to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, asserting ineffective assistance of counsel during trial, sentencing and appeal and a *Blakely*[1] claim

---

1. *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 2539, 159 L.Ed.2d 403 (2004)

regarding sentencing enhancement. In three Motions to Supplement his 2255 petition, Armstrong adds two more plaints about the ineffective assistance of trial counsel and asks this Court to apply *Shepard v. United States,* — U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), to his sentencing. For the reasons that follow, Armstrong's Motions to Supplement are granted and his Petition under 2255, with supplements, is denied in its entirety.

After a jury found Armstrong guilty of conspiracy to possess with intent to distribute cocaine and cocaine base, possession with intent to distribute cocaine and cocaine base, and attempted possession and distribution of cocaine and cocaine base,[2] Armstrong was sentenced to 300 months imprisonment on April 19, 2001. The Third Circuit affirmed the judgment of sentence on May 28, 2003. Armstrong filed this timely[3] petition on August 27, 2004.

**FACTS**

In 1997, Armstrong asked Terry W. Dillard to purchase cocaine in California and ship it to either his own or ArmstronG's Philadelphia address. When a shipment was sent to Dillard's, he would telephone Armstrong to pick up the cocaine for resale in Philadelphia. Armstrong was to remit to Dillard $20,000 per kilogram and retain as profit the difference between that and the selling price.

On August 12, 1999, United States postal inspectors intercepted and obtained search warrants for packages mailed by Dillard. Each package contained approximately one kilogram of cocaine. Inspectors removed the cocaine, replaced it with a sham substance, inserted a remote alarm to go off when the package was opened, and arranged for a controlled delivery to Dillard's address. On August 13, 1999, an undercover postal inspector delivered the package to Dillard's home. Seven minutes later, Armstrong arrived and went inside. After twenty minutes the package was opened, sounding the alarm. Postal inspectors entered the residence and found both Armstrong and Dillard on the second floor together with the opened package. They were arrested and Armstrong was found with $7,410 during a search incidental to his arrest.

Armstrong was taken to the postal inspectors' office where he was read his rights and given a written list of rights with a waiver form. After executing the waiver, Armstrong admitted he went to Dillard's house to purchase cocaine and went upstairs to open the package of cocaine. He said he and Dillard had been selling cocaine Dillard purchased in California for a few months, most recently in kilogram form. The Government used express mail labels and telephone records to document the ongoing conspiracy to traffic in cocaine.

After the jury convicted Armstrong, the court sentenced him to 300 months imprisonment, 10 years supervised release, a $5,000 fine, and a $100 special assessment. At the sentencing hearing, the court found Armstrong was an organizer or leader of the cocaine conspiracy and was subject to a two-point enhancement in his base offense level under U.S.S.G. § 3B1.1(c). The court also imposed a two-point obstruction of justice enhancement under U.S.S.G. § 3C1.1 for testifying falsely at the suppression hearing when he denied under oath that he signed a waiver of his rights.

On appeal Armstrong challenged the probable cause for his arrest, the Govern-

---

**2.** 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846.

**3.** When a defendant does not file a certiorari petition, the judgment does not become final until the time for seeking review expires. *United States v. Davies,* 394 F.3d 182, 186 n. 2 (3d Cir.2005).

ment's use of peremptory strikes under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the testimony of postal inspector Thomas Henderson regarding suppression and the two sentencing enhancements imposed. Armstrong's 2255 petition raises several of the same issues under the guise of ineffective assistance of counsel during trial.

## DISCUSSION

■ This Court considers a petition brought pursuant to Section 2255[4] "to ensure that individuals are not imprisoned in violation of the Constitution, and not to review questions of guilt or innocence." *United States v. Garth,* 188 F.3d 99, 108 (3d Cir.1999). Section 2255 "does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors." *United States v. Colon,* 1995 WL 361151, *2 (E.D.Pa.1995). The errors claimed must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). A petitioner is entitled to relief only if he can establish he is in custody in violation of federal law or the Constitution. *Enright v. United States,* 347 F.Supp.2d 159, 163 (D.N.J.2004).

Armstrong argues that his sentence should be vacated and corrected because he was denied his Sixth Amendment right to effective assistance of counsel in violation of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In *Strickland,* the Court held "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064; *see also Rompilla v. Horn,* 355 F.3d 233, 246 (3d Cir.2004).

■ Ineffective assistance of counsel is performance "below an objective standard of reasonableness," and resulting in prejudice to the defendant. *Strickland* at 688, 104 S.Ct. at 2065. To successfully present an ineffective assistance of counsel claim, a petitioner must first establish counsel's performance was deficient. *Jermyn v. Horn,* 266 F.3d 257, 282 (3d Cir. 2001). The court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland* at 689, 104 S.Ct. at 2065 (internal quotations omitted). With regard to the prejudice prong of *Strickland,* a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir.2002).

Under Rule 4(b) of the Rules Governing Section § 2255 Proceedings,[5] a district

---

4. **28 U.S.C. § 2255. Federal custody; remedies on motion attacking sentence**

   A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without juris-

diction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

5. **Rule 4(b).**

court may summarily dismiss a motion in cases where the motion, files, and records "show conclusively that the movant is not entitled to relief." *United States v. Nahodil,* 36 F.3d 323, 325 (3d Cir.1994). Rule 8(a) [6] makes an evidentiary hearing discretionary. *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989), *appeal after remand,* 904 F.2d 694 (3d Cir.1990), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991).

■ To determine whether an evidentiary hearing is necessary, a district court must perform an analysis under *Strickland* at least once to determine whether petitioner has presented any nonfrivolous claim. If a nonfrivolous claim fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland,* then further factual development in the form of a hearing is required. *United States v. Dawson,* 857 F.2d 923, 928 (3d Cir.1988). "That is, if a nonfrivolous claim does not *conclusively* fail either prong of the *Strickland* test, then a hearing must be held." *Id.*

■ Even if we were to find Armstrong's trial counsel's conduct deficient, which we do not, Armstrong fails to satisfy the prejudice prong of the *Strickland* test. Armstrong argues counsel failed to develop evidence which would, in total, prove Dillard and Stephanie Hawkins were the cocaine dealers and when the alarms went off in the marked box only Dillard and Hawkins were upstairs opening it. Armstrong claims he was downstairs when the box was opened and when he was arrested.

Armstrong faults trial counsel for failing to investigate his case sufficiently to highlight inconsistencies in the testimony of two of the officials on the scene, Parris Hamilton and Thomas Henderson. Armstrong claims he was arrested downstairs, not upstairs, by an officer who was not Parris Hamilton. Armstrong fails to suggest how these inconsistencies, even if taken as true, would undermine our confidence in the outcome of the trial.

Armstrong avers appeals counsel was ineffective for failing to preserve a suppression issue. Armstrong asserts he was questioned before receiving his *Miranda* warnings. Taking as true Armstrong's claim of the ineffective assistance of appeal counsel and examining the record without Armstrong's statement to postal inspectors, this Court does not find a questionable verdict.

Armstrong challenges several pieces of evidence—the date Dillard's mother died, the dates cocaine shipments began, the amount of money in Dillard's bank account—which he says prove Dillard was selling cocaine in Philadelphia before connecting with Armstrong. Armstrong says he asked counsel to subpoena records from Western Union and car lots from which Dillard purchased cars. The records, if found and if true, serve only to make Dillard apparently more guilty, not sug-

**Initial consideration by judge**.... If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court....

6.   **Rule 8. Evidentiary Hearing.**
     **(a) Determination by court.** [T]he judge ... shall ... determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates.

gest that Armstrong is less guilty. The same fallacy applies to Armstrong's lengthy analysis of Stephanie Hawkins's alleged entanglements in the cocaine trade. Guilt is not a zero sum: increasing Dillard's and Hawkins's involvement does not reduce our confidence in the outcome of Armstrong's trial.

Armstrong faults trial counsel for failing to call to testify half a dozen people who Armstrong says could have accounted for the money found on Armstrong at the time of his arrest, for deficiencies in her cross-examination of Dillard, for her analysis of the Government's telephone records, and for a delay in sending discovery to Armstrong's family after trial. None of these errors justify questioning the jury's verdict. Under *Dawson,* taking all of Armstrong's allegations as true, his claims serve only to increase the guilt of Dillard and Hawkins, not reduce his own.

Armstrong continues to maintain Dillard was the leader of the enterprise and as a result Armstrong should not have received a two level sentencing enhancement for leadership; nor should he have received a two-level enhancement for the quantity of drugs involved in the conspiracy. In neither argument does he suggest ineffective assistance of counsel caused the perceived inequity. Collateral relief is not available for inequities, only for constitutional violations in the conduct of trial.

Armstrong also argues his sentence is unconstitutional in light of the Supreme Court decisions in *Blakely* and *Shepard.* At the time Armstrong filed his 2255 motion, *United States v. Booker,* — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), had not been decided. Since Armstrong's two sentencing enhancements were decided by the judge without the benefit of a jury determination and since his criminal history level was determined without reference to the charging documents in the earlier cases, Armstrong's sentence would be illegal under *Booker* and *Shepard* if imposed today. Armstrong's sentence, however, was final before *Blakely* was decided; so, the question here is whether *Booker* and/or *Shepard* apply retroactively.

To analyze the retroactivity of a new rule of law, the first question is whether the rule is substantive or procedural. *United States v. Swinton,* 333 F.3d 481, 487 (3d Cir.2003). Rules of criminal procedure "dictate[ ] what fact-finding procedure must be employed to ensure a fair trial"; substantive rules determine whether particular conduct is unlawful. *United States v. Jenkins,* 333 F.3d 151, 154 (3d Cir.2003); *see also Swinton,* 333 F.3d at 488–89. A court must determine whether a petitioner's sentence was final before the new decision and then must decide whether the decision enunciates a new rule. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality); *Lewis v. Johnson,* 359 F.3d 646, 653 (3d Cir.2004). A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070.

The analysis begins with *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 471, 490, 120 S.Ct. at 2363. In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Court held that any sentencing enhancement, including those below the statutory maximum, must be proved beyond a reasonable doubt to a jury. In *Booker,* the Court reaffirmed *Apprendi* and applied *Blakely* to the federal Sentencing Guidelines. Before *Book-*

er, *Apprendi* did not apply to the federal Sentencing Guidelines. *United States v. Phillips*, 349 F.3d 138, 141 n. 3 (3d Cir. 2003). Therefore, *Booker's* extension of *Apprendi* and *Blakely* to the federal Sentencing Guidelines established a new rule.

A new rule is not retroactive unless it meets one of the *Teague* exceptions: either implicating strictly private conduct or "alter[ing] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Swinton*, 333 F.3d at 487. To apply retroactively to cases on collateral review, the new rule must be a "watershed rule of criminal procedure." *Schriro v. Summerlin*, 542 U.S. 348, ——, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004). New rules of procedure do not have retroactive application because they "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Summerlin*, 124 S.Ct. at 2523. The Supreme Court itself in *Booker* expressly noted that its holding applied to "all cases on direct review." *Booker*, 125 S.Ct. at 769. Federal courts have consistently held *Booker* does not apply to collateral challenges.[7]

Reasoned arguments also counter the conclusion that *Booker* is not retroactive. Justice O'Connor suggested in her dissent to *Blakely*, "all criminal sentences imposed under the federal and state guidelines since *Apprendi* was decided in 2000 arguably remain open to collateral attack." *Blakely*, 124 S.Ct. at 2549. A Note in the Harvard Law Review argues forcefully for the retroactive application of *Apprendi's* reasonable doubt standard, which, if it were to prevail, would extend to *Blakely* and *Booker*. 118 Harv. L.Rev. 1642, 1663. The Third Circuit has not spoken on the issue of retroactivity. For that reason, this Court will grant a certificate of appealability,[8] pursuant to 28 U.S.C. § 2253(c), with respect to petitioner's claim that his sentence violates *Booker*, because Armstrong has made a substantial showing of the denial of a constitutional right to have a jury find beyond a reasonable doubt all of the facts—his leadership role in the crime and the quantity of cocaine involved—on which his sentencing enhancement was based.

In his third Motion to Supplement, Armstrong asks this Court to apply *Shepard* to his case. The Court held in *Shepard* police reports could not be relied upon for an enhancement under the Armed Career Criminal Act. *Shepard v. United States*,

---

**7.** The Seventh, Tenth and Eleventh circuits have decided *Booker* does not apply retroactively to cases on collateral appeal. *Varela v. United States*, 400 F.3d 864 (11th Cir.2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir.2005); *United States v. Leonard*, 2005 WL 139183 (10th Cir. Jan.24, 2005) (unpublished); *In re Anderson* 396 F.3d 1336, 1338–40 (11th Cir.2005).

    Federal district courts in Pennsylvania and six other states have concluded *Booker* is not retroactive. *United States v. Wenzel*, 359 F.Supp.2d 403 (W.D.Pa.2005); *United States v. Aikens*, 358 F.Supp.2d 433, 441 (E.D.Pa. 2005); *Jaffe v. United States*, Slip Copy, 2005 WL 589330 (D.Utah 2005); *John v. Jeter*, 2005 WL 562721, *2 (N.D.Tex.2005); *Woodard v.*

*U.S.*, 2005 WL 524725, *1–2 (E.D.N.Y.2005); *Fisher v. U.S.*, 2005 WL 525655, *2–3 (D.Minn.2005); *United States v. Reno*, 2005 WL 475369, *1–5 (D.Kan.2005); *United States v. Siegelbaum*, 2005 WL 196526, *2–4 (D.Or. 2005); *Gerrish v. U.S.*, 353 F.Supp.2d 95, 96 (D.Me.2005).

**8.** An appeal is not permitted unless the petitioner obtains a certificate of appealability. 28 U.S.C. § 2253. "At the time a final order denying a motion under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue." Third Cir. Loc.App. R. 22.2; *United States v. Williams*, 158 F.3d 736, 742 n. 4 (3d Cir.1998).

—— U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). The Court stated "any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." *Shepard*, 125 S.Ct. 1254, 2005 WL 516494 *1 (citing *Jones v. United States*, 526 U.S. 227, 243, n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Apprendi* at 490, 120 S.Ct. 2348). Since *Shepard* rests on *Apprendi*, arguably the same retroactivity arguments apply. At least one court has found prior convictions must be admitted or proved beyond reasonable doubt. *United States v. Harper*, 360 F.Supp.2d 833, 835 (E.D.Tex.2005).

Armstrong argues his criminal history score was not found beyond a reasonable doubt by the jury. Since a criminal history score serves to increase the penalty under the Sentencing Guidelines, it too may be susceptible to the *Apprendi/Booker* line of decisions. Since the Third Circuit has not decided the issue, the certificate of appealability will also include the *Shepard* challenge.

In conclusion, we find none of Armstrong's 2255 claims warrant vacating or correcting his sentence, but will certify an appeal on the retroactive application of *Booker* and *Shepard* to collateral challenges. Accordingly, we enter the following:

### ORDER

AND NOW, this 28TH day of March, 2005, it is hereby ORDERED Defendant's Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence (Document No.173) is summarily DISMISSED. It is further ORDERED that a certificate of appealability is granted with respect to petitioner's claims that his sentence violates *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), extended to the United States Sentencing Guidelines in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, (2005), and *Shepard v. United States*, —— U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), on the ground that petitioner has made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c). Defendant's Motions to Supplement his 2255 Motion (Documents 174, 176, and 178) are GRANTED; the grounds for granting Defendant's 2255 Motion contained therein are DENIED.