# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 18-11149

————

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

v.

EFRAIN SIFUENTES,

  Defendant - Appellant

————

Appeal from the United States District Court
for the Northern District of Texas

————

Before WIENER, HIGGINSON, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

Efrain Sifuentes pleaded guilty to a drug-related money laundering conspiracy.  Sifuentes now challenges his below-Guidelines sentence of 160 months as both procedurally incorrect and substantively unreasonable.  We reject his arguments and affirm.

**I**

Sifuentes's cousin Pablo Zavala sold large quantities of methamphetamine smuggled in from Mexico to Fernando Obregon in Dallas. Sifuentes worked with Zavala to launder and return the drug proceeds to Mexico.  He also recruited the help of Aaron Gonzalez to launder the money and conduct wire transfers to Mexico.  Sifuentes let Gonzalez know the money

came from the sale of drugs, telling him that Zavala concealed illegal drugs inside "candies, soaps, and other items," which Zavala then shipped to Dallas. From his recruitment until the time of his arrest, Sifuentes exchanged over 600 electronic communications with Zavala and Obregon, primarily via WhatsApp and phone calls.

On at least one occasion, Sifuentes tried to convince Gonzalez to pick up a load of methamphetamine in Dallas. He explained to Gonzalez that he needed "some cokes and soap" moved—objects Sifuentes previously told Gonzalez contained hidden drugs. Sifuentes could not pick up the drugs himself because he was busy collecting proceeds of other drug sales in Kansas. But Gonzalez did not want to leave the drugs in "[his] car for a long time." Sifuentes then asked Gonzalez to transport the drugs to a nearby hotel on his behalf, stating he could pick up the drugs later. Gonzalez again refused, claiming he was "spooked," and worried Zavala would not "have [his] back in jail . . . ." Two weeks later, the FBI arrested Sifuentes.

In February 2018, Sifuentes proceeded to a jury trial on the indictment alleging a money laundering conspiracy. In March, the trial ended in a hung jury. The court set a second trial date, but before trial, Sifuentes pleaded guilty without a plea agreement. He admitted he knowingly conspired to conduct financial transactions with proceeds he knew were exclusively derived from drug trafficking.

The probation officer writing the Presentence Investigation Report (PSR) for Sifuentes's sentence included the attempted drug pickup with Gonzalez in his calculation. U.S.S.G. § 2S1.1(a). The Sentencing Guidelines establish two different methods for calculating a sentence for a money laundering conviction, depending on whether the defendant also committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the substantive underlying offense, or laundered money only. *See* U.S.S.G. §§ 2S1.1(a)(1)–(2).

No. 18-11149

The PSR here applied the former method, relying on an underlying drug conspiracy to calculate the base offense level.

Sifuentes objected, claiming that his one abortive attempt to facilitate drug distribution should not lead to culpability under section 2S1.1(a)(1). The Government countered that his "near constant contact" with leaders in the drug conspiracy, as well as his acts of money laundering and attempt on at least one occasion to direct another person to pick up drugs, showed a pattern of engaging in the underlying and ongoing criminal activity.

The district court overruled Sifuentes's objection to his base offense level and calculated a preliminary Guidelines imprisonment range of 262 to 327 months, capped by statute at 240 months. To get to that range, the PSR applied section 2S1.1(a)(1), which determined the base level for the underlying offense through cross-reference to section 1B1.3(a)(1)(A). Applying section 1B1.3(a)(1)(A) led the district court by cross-reference to section 2D1.1. Finding Sifuentes laundered $93,974 in drug proceeds, the PSR found Sifuentes accountable for 14.91 kilograms of methamphetamine. A drug offense involving between five and fifteen kilograms of methamphetamine leads to a base offense level of 34. After final adjustments, the district court found an offense level of 38, with a criminal history category of II.

Sifuentes made several arguments for a downward departure. He requested a sentence of 60 months. The district court acknowledged Sifuentes's arguments and ultimately decided on a sentence of 160 months—an 80-month reduction below the statutory cap and Guidelines-suggested range. Sifuentes objected to the procedural and substantive reasonableness of this sentence.

## II

We review the district court's factual findings for clear error and its application of the Guidelines de novo. *United States v. Ruiz,* 621 F.3d 390, 394

No. 18-11149

(5th Cir. 2010).  We review the substantive reasonableness of the sentence for an abuse of discretion.  *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015).

Both Sifuentes and the Government agree that section 2S1.1(a) should be used to calculate Sifuentes's sentence.  But they disagree about which of the two subsections should apply.

Section 2S1.1(a)(1) applies the offense level for the underlying offense from which the laundered funds were derived if (A) the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the underlying offense, and (B) the offense level can be determined.  *See United States v. Torres*, 856 F.3d 1095, 1098–99 (5th Cir. 2017); *United States v. Charon*, 442 F.3d 881, 887 (5th Cir. 2006).  In this case, the underlying offense from which the funds were derived is the sale of with intent to distribute a controlled substance, not conspiracy to possess with intent to distribute a controlled substance.  The government needs to show a likelihood the underlying conduct occurred by a preponderance of the evidence to include relevant facts in sentencing.  *United States v. Harper*, 448 F.3d 732, 735 (5th Cir. 2006).

By contrast, section 2S1.1(a)(2) is used to calculate the sentence if the defendant either is not responsible for the underlying offense or if the proper offense level for the underlying offense cannot be calculated.  Under this subsection, the court determines the offense level based on the value of the laundered funds.  U.S.S.G. § 2S1.1(a)(2).

Sifuentes argues that the court should have applied section 2S1.1(a)(2) because he was not involved in the underlying drug offense.  His calculation under section 2S1.1(a)(2) leads to an offense level of 26.  The Guidelines range for an offense level of 26 and Criminal History Category II is 70 to 87 months.

No. 18-11149

To support his claim, Sifuentes invokes a commentary to the Guidelines, which explains that a person who is hired to help unload a single drug shipment is not culpable for all of the shipments in a given conspiracy. *See* U.S.S.G. § 1B1.3 cmt. n.4(c)(III). But that commentary does not apply here. Sifuentes was not a one-time unloader. Unlike a stevedore hired to unload a single shipment of drugs, and nothing more, Sifuentes repeatedly communicated with and moved money for higher ranking members in a broad drug and money laundering conspiracy. So there is sufficient evidence from which the district court concluded that Sifuentes at least aided and abetted the distribution of drugs from which the laundered funds were derived. *See United States v. Mata*, 409 F. App'x 740, 743 (5th Cir. 2011). His attempt to convince Gonzalez to take drugs and move them to a hotel for safekeeping is merely one illustration of his continued involvement in the drug distribution and money laundering conspiracy. *See United States v. Barfield*, 941 F.3d 757, 763 (5th Cir. 2019) ("Particularly in drug cases, this circuit has broadly defined what constitutes 'the same course of conduct' or 'common scheme or plan.'") (quoting *United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993)).

The Government argued, and district court agreed, that because the district court found Sifuentes not only tried to convince Gonzalez to move the methamphetamine, but also consistently communicated with and coordinated with senior individuals in the ongoing drug distribution and money-laundering conspiracy, he is responsible for the substantive conduct underlying the money laundering. As such, he is eligible to be sentenced under section 2S1.1(a)(1). The PSR's Guidelines range of 240 months, due to the statutory cap, is correct.

Sifuentes's challenge to the substantive reasonableness of the sentence also fails. Recognizing that the sentencing court is in a better position to find facts and judge their import under section 3553(a), substantive reasonableness of a sentence is reviewed for an abuse of discretion. *Diehl*, 775 F.3d at 724.

We apply a presumption of reasonableness to a below-Guidelines sentence. *United States v. Simpson*, 796 F.3d 548, 557 (5th Cir. 2015). To rebut this presumption, Sifuentes must demonstrate that the sentence: "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.* at 558.

Sifuentes reprises the arguments and resubmits the evidence arguing for a downward departure at the district court. The district court took account of the evidence and, consistent with section 3553, issued a downward variance of 80 months. Mere disagreement with the sentence is insufficient to rebut the presumption of reasonableness. *See United States v. Rodriguez*, 660 F.3d 231, 235 (5th Cir. 2011). Sifuentes has not offered any sufficient grounds to rebut the presumption of reasonableness for a below-Guidelines sentence.

The sentence is affirmed.